1
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

                     EASTERN DISTRICT OF CALIFORNIA
10
                          ----oo0oo----
11

12

CONNIE J. WILSON,                    NO. CIV. 2:09-863 WBS GGH
13
          Plaintiff,
14                                   MEMORANDUM AND ORDER RE:
     v.                              MOTION TO DISMISS
15
JPMORGAN CHASE BANK, NA., as
16  successor by merger to
Washington Mutual Bank, a/k/a
17  JPMorgan Chase Bank, N.A., as
an acquirer of certain assets
18  and liabilities of Washington
Mutual Bank from the FDIC
19  acting as receiver and LENDER
DOE,
20
          Defendants.
21  _____/

22

23                        ----oo0oo----

24        Plaintiff Connie J. Wilson brought this action against

25  defendant JPMorgan Chase Bank, NA alleging various federal and

26  state claims arising out of plaintiff's mortgage transaction.

27  Presently before the court is defendant's motion to dismiss the

28  Second Amended Complaint ("SAC") pursuant to Federal Rule of

                              1

Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

On October 20, 2005, plaintiff alleges that her now deceased husband, James B. Wilson, entered into a loan with Long Beach Mortgage Company ("Long Beach") to refinance plaintiff's property at 10787 Oakton Way, Rancho Cordova, California.  (SAC ¶ 15)  This loan was secured by a Deed of Trust on the property. (Id.)  The Deed of Trust listed plaintiff and her husband as the borrower, as joint tenants.  (Def.'s Req. for Judicial Notice Ex. 2.)  The Deed of Trust also listed Long Beach as trustee and lender.  (Id.)

Plaintiff alleges that her husband obtained the credit to refinance their home without her credit information.  (SAC ¶ 38.)  Plaintiff's husband was allegedly the sole borrower when the loan was consummated.  (Id.)  The SAC alleges that Long Beach required plaintiff to sign the Deed of Trust because plaintiff was listed as a joint owner of the property and her signature was necessary to perfect Long Beach's security interest in the property.  (Id. ¶¶ 17, 39.)  Plaintiff allegedly did not execute a promissory note and only signed the security instrument at the behest of Long Beach.  (Id.)

Plaintiff alleges that Long Beach never provided her with two copies of a completed Notice of Right to Cancel at the time of consummation of the loan, in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.  (SAC ¶¶ 29-30.) Plaintiff further alleges that First American Title Insurance Company actually provided plaintiff the Notice of Right to Cancel on October 26, 2005, and instructed plaintiff to back date the

2

1  document to the date of the loan transaction. (Id. ¶ 58.)

2       Plaintiff's husband allegedly began negotiating with

3  Washington Mutual to modify the loan sometime before July 2008.[1]

4  (Id. ¶ 32.)  On September 10, 2008, plaintiff sent a Qualified

5  Written Request ("QWR") under the Real Estate Settlement

6  Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, to Long Beach

7  and Washington Mutual that included demands to rescind the loan

8  and disclose the holder of her mortgage note in accordance with

9  TILA.  (Id. ¶ 28.)  In this letter, plaintiff also allegedly

10 demanded that all communications relating to collection of the

11 outstanding balance of her loan cease, pursuant to the Rosenthal

12 Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §

13 1788.2.  (Id. ¶ 119.)  On September 25, 2008, defendant purchased

14 the assets of Washington Mutual from the Federal Deposit

15 Insurance Corporation ("FDIC") Receiver.  (Def.'s Req. for

16 Judicial Notice Ex. 7.)  Plaintiff alleges that defendant failed

17 to respond to her QWR, rescind the loan, or cease contacting her

18 in an attempt to collect her outstanding payments.  (SAC ¶¶ 71,

19 100, 119.)  Plaintiff allegedly attempted to follow up on her

20 request with Washington Mutual and Long Beach by mail on November

21 17, 2008, November 21, 2008, and December 19, 2008.  (Id. ¶ 119.)

22      A Substitution of Trustee was recorded in Sacramento

23 County on December 23, 2008, which listed defendant as the

24

25      [1]    At the time plaintiff was seeking modification of the
   loan, Washington Mutual, rather than defendant owned an interest
26 in the loan.  Washington Mutual was subsequently closed by the
   Federal Deposit Insurance Corporation ("FDIC") and defendant
27 bought Washington Mutual's assets from the FDIC Receiver on
   September 25, 2008 in a Purchase and Assumption Agreement ("P&A
28 Agreement"). (Def.'s Req. for Judicial Notice Ex. 7.)

1  beneficiary of the Deed of Trust and substituted California

2  Reconveyance Company ("CRC") as the new trustee.  (Def.'s Req.

3  for Judicial Notice Ex. 4.)  After the loan went into default, a

4  Notice of Default and Election to Sell Under Deed of Trust was

5  filed in Sacramento Country by CRC on December 23, 2008.  (Id.

6  Ex. 5.)  A Notice of Trustee's Sale was then recorded by CRC in

7  Sacramento County on March 25, 2009.  (Id. Ex. 6.)

8          In her SAC, plaintiff asserts causes of action against

9  defendant for violations of the Equal Credit Opportunity Act

10 ("ECOA"), 15 U.S.C. §§ 1691-1691f, the Fair Housing Act ("FHA"),

11 42 U.S.C. §§ 3601-3619, TILA, RESPA, RFDCPA, and California's

12 Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-

13 17210, as well as breach of the covenant of good faith and fair

14 dealing, slander of credit, and intentional infliction of

15 emotional distress.  Defendant moves to dismiss all causes of

16 action in Plaintiff's SAC for failure to state a claim upon which

17 relief can be granted pursuant to Rule 12(b)(6).

18 II. Discussion

19         On a motion to dismiss, the court must accept the

20 allegations in the complaint as true and draw all reasonable

21 inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

22 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

23 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

24 (1972).  To survive a motion to dismiss, a plaintiff needs to

25 plead "only enough facts to state a claim to relief that is

26 plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

27 544, 570 (2007).  This "plausibility standard," however, "asks

28 for more than a sheer possibility that a defendant has acted

4

unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

In general a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Defendant requests that the court take judicial notice of a number of publically recorded instruments relating to plaintiff's mortgage and the P&A Agreement between defendant and the FDIC. (See Docket No. 22.) The court will take judicial notice of the mortgage documents, since they are matters of public record whose accuracy cannot be questioned. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The court will also take judicial notice of the P&A Agreement because it is a governmental source whose accuracy cannot be questioned. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (taking judicial notice of agreements to which the government was a party).

A.   Liability Under the P&A Agreement

Defendant contends that it cannot be liable for

5

plaintiff's claims because liability for claims related to Washington Mutual's lending practices remained with the FDIC when defendant purchased Washington Mutual's assets. (See Def.'s Supp. Brief (Docket No. 31) at 2:10-21.)[2]

Under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1832(d), the FDIC may accept appointment as a receiver for any closed insured depository institution.   12 U.S.C. § 1821(c). As receiver, the FDIC succeeds to "all rights, titles powers and privileges of the insured depository institution" and may "take over the assets of and operate" the bank.   Id. §§ 1821(d)(2)(A)(i), (B)(i).   When appointed as receiver, "the FDIC . . . 'steps into the shoes' of the failed [financial institution]" and operates as its successor.   O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994).   The FDIC may transfer the failed bank's assets to another bank, separate the failed bank's assets from liabilities, or retain these liabilities through a P&A Agreement.   See, e.g., W. Park Assocs. v. Butterfield Sav. & Loan Ass'n, 60 F.3d 1452, 1458-59 (9th Cir. 1995); Kennedy v. Mainland Sav. Ass'n, 41 F.3d 986, 990-91 (5th Cir. 1994); Payne v. Sec. Sav. & Loan Ass'n, 924 F.2d 109, 111 (7th Cir. 1991).   No liability is transferred from a closed bank to an assuming bank without an express transfer of liability.   See Kennedy, 41 F.3d at 990-91; Payne, 924 F.2d at 111; Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1109 (11th Cir. 1990); Village of Oakwood

---

[2]     The court requested supplemental briefing from the parties on whether defendant is the proper successor-in-interest to plaintiff's claims against Washington Mutual under the P&A Agreement at the January 19, 2010 hearing on defendant's motion to dismiss.   (See Docket No. 20.)

1    v. State Bank & Trust Co., 519 F. Supp. 2d 730, 739 (N.D. Ohio

2    2007), aff'd 539 F.3d 373 (6th Cir. 2008).

3          On September 25, 2008, approximately two weeks after

4    plaintiff sent a QWR to Washington Mutual, the Office of Thrift

5    Supervision ("OTS") closed Washington Mutual and appointed the

6    FDIC as receiver for the bank.  (See Def.'s Req. for Judicial

7    Notice Ex. 7.)  On the same day the FDIC and Chase signed a P&A

8    Agreement, which allocated Washington Mutual's assets and

9    liabilities among the FDIC in its corporate capacity, the FDIC

10   acting as receiver for Washington Mutual, and Chase.  (Id.)  In

11   the P&A Agreement, Chase explicitly did not assume any liability

12   related to "borrower claims."  (Id. § 2.5.)  Specifically,

13   section 2.5 of the P&A Agreement states:

14          Notwithstanding anything to the contrary in this
       Agreement, any liability associated with borrower claims
15     for payment of or liability to any borrower for monetary
       relief, or that provide for any other form of relief to
16     any borrower . . . related in any way to any loan or
       commitment to lend made by the Failed Bank prior to
17     failure, or to any loan made by a third party in
       connection with a loan which is or was held by the Failed
18     Bank, or otherwise arising in connection with the Failed
       Bank's lending or loan purchase activities are
19     specifically not assumed by [Chase].

20   (Id.)

21          In Williams v. FDIC, No. Civ. 2:07-2418 WBS GGH, on

22   limited remand from the Ninth Circuit, this court was asked to

23   determine whether the FDIC or defendant was the appropriate

24   successor-in-interest to claims against Washington Mutual for its

25   credit card business practices under the same P&A Agreement

26   presently before the court.  The court found that the Williams

27   plaintiff's claims were "borrower claims" within the meaning of

28   section 2.5 of the P&A Agreement because they were related to

                                7

related to a "commitment to lend" by Washington Mutual, therefore leaving liability for the claims with the FDIC. <u>Williams</u>, No. Civ. 2:07-2418 WBS GGH, 2009 WL 5199237, at *6 (E.D. Cal. Dec. 23, 2009); <u>see also</u> <u>Yeomalakis v. FDIC</u>, 562 F.3d 56, 60 (1st Cir. 2009).

A number of other district courts have held that the FDIC retained liability for claims relating to mortgage loans held by Washington Mutual before September 25, 2008 under the P&A Agreement. <u>See, e.g.</u>, <u>Biggins v. Wells Fargo & Co.</u>, No. Civ. 09-01272-JSW, 2009 WL 2246199, at *12 (N.D. Cal. July 27, 2009); <u>Grealish v. Wash. Mut. Bank FA</u>, No. Civ. 08-763-TS, 2009 WL 2170044, at *1 (D. Utah July 20, 2009); <u>Cassese v. Wash. Mut., Inc.</u>, No. Civ. 05-2724-ADS-ARL, 2008 WL 7022845, at *3 (E.D.N.Y. Dec. 22, 2008). Under the terms of the P&A Agreement, defendant clearly and explicitly did not assume any liability for claims related to loans purchased by Washington Mutual from third parties or claims arising in connection with Washington Mutual's lending activities. (<u>See</u> Def.'s Req. Judicial Notice Ex. 7 § 2.5.) Liability for claims related to conduct at the inception of plaintiff's loan, which was issued by Long Beach Mortgage Company before being purchased by Washington Mutual, therefore would seem fall within this category.

However, plaintiff contends that unlike in <u>Williams</u>, defendant is liable for her claims because she alleges that Washington Mutual may have only purchased servicing rights to her loan from Long Beach. Plaintiff argues if this were the case section 2.5 of the P&A Agreement would be inapplicable, since borrower claims relate to loans "which is or was held by

8

1   [Washington Mutual]."  (<u>See</u> Pl.'s Supp. Brief 6:3-18; Def.'s Req.
2   Judicial Notice Ex. 7 § 2.5.)  Instead, her claims against
3   defendant would be allowed to proceed under section 2.1 of the
4   P&A Agreement, which appears in the section governing
5   liabilities.  In section 2.1 defendant agreed to assume
6   liabilities relating to "all mortgage servicing rights and
7   obligations of [Washington Mutual]."  (Def.'s Req. Judicial
8   Notice Ex. 7 § 2.1.)  The plain language of the P&A Agreement
9   indicates that defendant explicitly agreed to assume liabilities
10  related to Washington Mutual's mortgage servicing business,
11  unlike borrower claims.  (<u>Id.</u>)

12       Accordingly, if Washington Mutual only purchased
13  servicing rights to plaintiff's loan defendant can be liable for
14  claims arising out of Washington Mutual's servicing obligations.
15  <u>See</u> <u>Allen v. United Fin. Mortg. Corp.</u>, 660 F. Supp. 2d 1089, 1096
16  fn.7 (N.D. Cal. 2009); <u>Biggins</u>, 2009 WL 2246199, at *12; <u>Punzalan</u>
17  <u>v. FDIC</u>, 633 F. Supp. 2d 406, 414 (W.D. Tex. 2009) ("Chase Bank
18  purchased Washington Mutual on the condition that FDIC remain
19  responsible for any 'Borrower Claims' . . . 'in connection with
20  Washington Mutual's lending or loan purchase activities.'  In
21  exchange . . . Chase Bank promised to assume responsibility for
22  all other liabilities, specifically including 'all mortgage
23  servicing rights and obligations of Washington Mutual.'"
24  (citations omitted)).  If, however, Washington Mutual purchased
25  the beneficial interest in plaintiff's loan, defendant may be
26  considered the holder of the loan under section 2.5 of the P&A
27  Agreement.  In that case, plaintiff's claims arising out of
28  conduct by Washington Mutual or Long Beach would be borrower

claims like the claims in Williams because defendant cannot be liable for any claims arising out of loans originated from or held by Washington Mutual prior to the P&A Agreement.  See Williams, 2009 WL 5199237, at *6.

At the motion to dismiss stage, the court does not have evidence before it to determine whether defendant owned servicing rights or the beneficial interest in plaintiff's loan.  Plaintiff is entitled to alternative pleading under Federal Rule of Civil Procedure 8(d) and can therefore plead that defendant is either the servicer, or alternatively, the beneficiary of her loan.  See Cabalo v. EMC Mortg. Corp., No. C-08-5667 MMC, 2009 U.S. Dist. LEXIS 8283, at *6 (N.D. Cal. Feb. 5, 2009).  Insofar as plaintiff's TILA claim relies on the allegation that defendant was an assignee of the beneficial interest of her loan, it is a borrower claim covered by the P&A Agreement.  See infra II.B.2.a. At this stage of the proceedings, however, the court cannot dismiss all of plaintiff's claims as borrower claims, since plaintiff has alternatively alleged that defendant solely serviced her loan.

Furthermore, unlike in Williams, plaintiff has also pled independent conduct by defendant after its purchase of Washington Mutual.  All of plaintiff's claims, besides her TILA claim, relate to actions taken by defendant after the execution of the P&A Agreement.  This conduct is independently actionable, as the P&A Agreement only covers liability for actions taken by Washington Mutual in relation to its lending activities, not future conduct by defendant.  See Williams, 2009 WL 5199237, at *5; Schulken v. Wash. Mut. Bank, No. C 09-02708 JW, 2009 WL

10

4173525, at *4 (N.D. Cal. Nov. 19, 2009).  Accordingly, the court

cannot grant defendant's motion to dismiss on the sole ground

that defendant did not assume liability for plaintiff's claims.

     B.   <u>ECOA and FHA Claims</u>

     Plaintiff's first cause of action purports to state a

claim for violations of the ECOA and FHA.  The ECOA prohibits a

creditor from discriminating against an applicant for credit "on

the basis of race, color, religion, national origin, sex or

marital status, or age."  15 U.S.C. § 1681(a)(1).  While the

Ninth Circuit has not yet articulated a standard for EOCA

discrimination claims, other circuits use a multi-element test to

determine whether a plaintiff has properly plead a claim for

discrimination under the EOCA.  Under this test, plaintiff must

allege that: (1) she is a member of a protected class; (2) she

applied for credit with defendants; (3) she qualified for credit;

and (4) she was denied credit despite being qualified.  <u>Chiang v.</u>

<u>Veneman</u>, 385 F.3d 256, 259 (3rd Cir. 2004).

     Plaintiff alleges she was discriminated against on the

basis of her marital status when she was required to sign the

Deed of Trust to prefect Long Beach's security interest in her

home because she jointly owned the property with her husband.

While the EOCA has been held to prohibit a lender from requiring

a spouse to join in the loan of another spouse unless the latter

does not meet credit requirements of the Act, § 1691d(a) of the

EOCA specifically provides that "[a] request for the signature of

both parties to a marriage for the purpose of creating a valid

lien . . . shall not constitute discrimination under this

subchapter."  15 U.S.C. § 1691d(a); <u>see also</u> <u>In re McMullan</u>, 196

11

1   B.R. 818, 832 (W.D. Ark. 1996).  Accordingly, the allegation that

2   plaintiff was forced to sign a security instrument to make Long

3   Beach's lien on her jointly-owned property valid does not

4   constitute a violation of the ECOA.

5         The FHA makes it unlawful "for any person or entity

6   whose business includes engaging in residential real estate-

7   related transactions to discriminate against any person in making

8   available such a transaction, or in the terms or conditions of

9   such a transaction because of race, color, religion, sex,

10  handicap, familial status, or national origin."  42 U.S.C. §

11  3605(a).  The SAC only makes one reference to the FHA, simply

12  alleging that the FHA prevents discrimination on the basis of

13  familial status without so much as identifying what acts

14  defendant took to discriminate against her under the statute.

15  (See SAC ¶ 37.)  Such vague and conclusory allegations are

16  insufficient to survive a motion to dismiss, and accordingly the

17  court will grant defendant's motion to dismiss plaintiff's claim

18  for violations of the ECOA and FHA.  See Iqbal, 129 S. Ct. at

19  1949.

20        C.   TILA Claims

21        Plaintiff alleges that defendant violated TILA when it

22  failed to rescind her loan after she indicated that Long Beach

23  allegedly did not provide an adequate number of Notice of Right

24  to Cancel documents to her at closing and later requested her to

25  back date the Notice of Right to Cancel.  (SAC ¶¶ 57-58.)  The

26  SAC additionally alleges that defendant violated § 1641 of TILA

27  when it did not respond to her request for the name, address, and

28  telephone number of the holder of the promissory note.  (Id. ¶

                                 12

52.)  Plaintiff requests both rescission of the loan and damages as the result of these alleged violations.

        1.  Standing

The SAC continually alleges that plaintiff's deceased husband was the sole borrower of the loan, that plaintiff did not receive any loan proceeds, and that she only signed the Deed of Trust to "perfect the security instrument."  Assuming that plaintiff's allegations are true, plaintiff has no standing to request rescission or damages under TILA because she was not a party to the loan contract and therefore is not an "obligor" or "consumer" with the right to rescind under TILA.  See Johnson v. First Fed. Bank of Cal., Nos. C 08-01796 PVT, C 08-00264 PVT, 2008 WL 2705090, at *5 (N.D. Cal. Jul. 8, 2008) (holding a party who was not named in the loan papers was not a "consumer" under TILA and therefore had no standing to bring a TILA claim).  Plaintiff has cited no authority for the proposition that she can simultaneously not be a party to the loan and sue defendant under TILA.  Accordingly, the court must grant defendant's motion to dismiss plaintiff's TILA claim.

        2.  Timeliness of Rescission Claim

Even if plaintiff were to have standing to bring her TILA claim, her rescission claim is untimely.  In a consumer credit transaction where the creditor acquires a security interest in the borrower's principal dwelling, TILA provides the borrower with "a three-day cooling-off period within which [he or she] may, for any reason or for no reason, rescind" the transaction.  McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007) (citing 15 U.S.C. § 1635).  A creditor

13

1    must "clearly and conspicuously disclose" this right to the
2    borrower along with "appropriate forms for the [borrower] to
3    exercise his right to rescind." 15 U.S.C. 1635(a).

4           If a creditor fails to provide the borrower with the
5    required notice of the right to rescind, the borrower has three
6    years from the date of consummation to rescind the transaction.
7    Id. § 1635(f); 12 C.F.R. § 226.23(a)(3) ("If the required notice
8    or material disclosures are not delivered, the right to rescind
9    shall expire 3 years after consummation."). The borrower's right
10   to rescind, moreover, applies equally against the original
11   creditor and subsequent assignees. 15 U.S.C. § 1641(c); see
12   Boles v. Merscorp, Inc., No. 08-1989, 2008 WL 5225866, at *3
13   (C.D. Cal. Dec. 12, 2008) ("Where the loan has been assigned, the
14   borrower still maintains the right to 'rescind against an
15   assignee to the full extent it would be able to rescind against
16   the original creditor.'" (quoting Rowland v. Novus Fin. Corp.,
17   949 F. Supp. 1447, 1458 (D. Haw. 1996))).

18          To exercise the right to rescind, a borrower must
19   "notify the creditor of the rescission by mail, telegram or other
20   means of written communication." 12 C.F.R. § 226.23(a)(2).
21   Notice is deemed effective "when mailed, when filed for
22   telegraphic transmission or, if sent by other means, when
23   delivered to the creditor's designated place of business." Id.
24   If a creditor then refuses to cancel the loan, the borrower has
25   one year from the refusal to file suit for damages pursuant to 15
26   U.S.C. § 1640. Miguel v. Country Funding Corp., 309 F.3d 1161,
27   1165 (9th Cir. 2002) (citing 15 U.S.C. § 1640(e)). However, if
28   the borrower files his or her suit over three years from the date

14

of a loan's consummation, a court is powerless to grant rescission.  Id. at 1164 ("[S]ection 1635(f) represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction. (quoting King v. California, 784 F.2d 910, 913 (9th Cir. 1986)); accord Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."); see also Cazares v. Household Fin. Corp., 2005 U.S. Dist. LEXIS 39222, at *24-25 (C.D. Cal. 2005) (concluding that "[i]f certain Plaintiffs did exercise their rights to rescind[ ] prior to the expiration of the three-year limitation period," such facts "would only entitle Plaintiffs to damages, not rescission" (citing 15 U.S.C. § 1640(a); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17 (1st Cir. 2005)).

        As alleged, plaintiff provided defendant with a valid notice of rescission within the requisite time period under 15 U.S.C. § 1635(f) and defendant refused to comply.  Therefore, plaintiff could bring a claim for damages pursuant to 15 U.S.C. § 1640.  See Buick v. World Sav. Bank, 637 F. Supp. 2d 765, 771-72 (E.D. Cal. 2008) (England, J.) (citing Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir. 2005)).  However, because plaintiff filed her Complaint over three years from the date on which she consummated her loan, the court is without jurisdiction to consider her claim for rescission under TILA.  Miguel, 309 F.3d at 1164.  Accordingly, plaintiff's rescission claim is time barred and the court must grant defendant's motion to dismiss this claim.

3.   <u>Tender</u>

Moreover, plaintiff's rescission claim fails because she has not demonstrated an ability to tender payment of the net proceeds she received from the loan.   The Ninth Circuit has held that rescission under TILA "<u>should</u> be conditioned on repayment of the amounts advanced by the lender."   <u>Yamamoto v. Bank of N.Y.</u>, 329 F. 3d 1167, 1170 (9th Cir. 2003) (emphasis in original). District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds.   <u>See, e.g.</u>, <u>Garza v. Am. Home Mortgage</u>, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27, 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"); <u>Ibarra v. Plaza Home Mortgage</u>, 2009 U.S. Dist. LEXIS 80581, at *22 (S.D. Cal. Sept. 4, 1009); <u>Carnero v. Weaver</u>, 2009 U.S. Dist. LEXIS 62665, at *8 (N.D. Cal. July 20, 2009); <u>Pesayco v. World Sav., Inc.</u>, 2009 U.S. Dist. LEXIS 73299, at *4 (C.D. Cal. July 29, 2009); <u>Inq Bank v. Korn</u>, 2009 U.S. Dist. LEXIS 73329, at *7 (W.D. Wash. May 22, 2009).   Plaintiff has not alleged any facts indicating that she is able to tender sufficient funds to repay the loan principal.   Without such facts, plaintiff cannot receive the equitable remedy of rescission.

4.   <u>Damages Claim</u>

a.   <u>Timeliness of Damages Claim</u>

The statute of limitations for a TILA damages claim is one year from the date of the alleged TILA violation.   15 U.S.C. § 1640(e).   Defendant argues that plaintiff's claim for damages

16

under TILA is foreclosed by the statute of limitations because it was filed more than one year after the alleged TILA violations. While plaintiff filed her claim for damages more than a year after the closing of her loan, the failure to honor plaintiff's rescission and disclosure requests are distinct actionable violations.  See Buick, 637 F. Supp. 2d at 771-72 (citing In re Wright, 133 B.R. 704 (E.D. Pa. 1991) ("The failure of a lender to properly act on a rescission is a new violation separate and distinct from the disclosure violation that gave rise to the right to rescind.")).  As plaintiff filed this action less than a year after her initial request for rescission and information about her loan in accordance with 15 U.S.C. § 1641(f)(2), her damages action is timely.  See Miquel, 309 F.3d at 1164; Buick, 637 F. Supp. 2d at 772.

             b.  Sufficiency of Damages Claim

        "Civil liability under TILA applies to creditors." Pelayo v. Home Capital Funding, No. 08-CV-2030 IEG (POR), 2009 U.S. Dist. LEXIS 44453, at *12 (S.D. Cal. May 22, 2009). "15 U.S.C. § 1641 provides that any TILA action (including a rescission claim) which may be brought against a creditor may also be brought against the assignee of a creditor.  However, under § 1641, loan servicers 'shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation.'"  Id. (emphasis in original); see also Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at *4-5 (N.D. Cal. Feb. 6, 2008) (noting that "although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable

17

1  under TILA as assignees unless the loan servicer owned the loan

2  obligation at some point").

3      Plaintiff alleges that she "believes that [defendant]

4  was merely acting as a servicing agent" of her loan but that

5  defendant's "true role is unknown and they could be a servicing

6  agent, lender, or have an interest in the subject loan and are

7  intentionally keeping their true role a mystery . . . ."  (FAC ¶

8  37.)  While it is unclear whether defendant was in fact an

9  assignee of plaintiff's loan, construing the facts and all

10  reasonable inferences in favor of plaintiff, it plausible that

11  defendant was an assignee of the creditor of the loan outside of

12  servicing obligations.[3]  See Pelayo, 2009 U.S. Dist. LEXIS 44453

13  at *13; see also Cabalo, 2009 U.S. Dist. LEXIS 8283, at *6

14  (finding the plaintiff sufficiently pled that defendant mortgage

15  servicer was liable under TILA under circumstances where "it

16  [was] not clear who the loan's holder [was]" and "documents

17  submitted by defendants [did] not show [an assignment of the

18  loan] was never made").

19      However, as previously noted, if defendant is in fact

20  an assignee of plaintiff's creditor, it cannot be liable for

21  plaintiff's TILA claim, as such a claim would be a borrower claim

22  under section 2.5 of the P&A Agreement.  See supra II. A.  If

23  defendant is a servicer, it still cannot be liable for the TILA

24  claim because servicers cannot be liable for damages under TILA.

25  In either scenario, plaintiff's TILA claim must fail and

26  _____

27      [3]    As previously mentioned, the allegation the defendant
    is a servicer and/or creditor under TILA is permissible because
28  alternative allegations are permitted under Federal Rule of Civil
    Procedure 8(d).

1   accordingly the court will grant defendant's motion to dismiss
2   this claim.

3        D.   Real Estate Settlement Procedures Act

4        RESPA provides that borrowers must be provided certain
5   disclosures relating to the mortgage loan settlement process.
6   See 12 U.S.C. § 2601.  Section 2605 of RESPA relates to the
7   disclosures and communications required regarding the servicing
8   of mortgage loans, and provides that loan servicers have a duty
9   to respond to QWRs from borrowers asking for information relating
10  to the servicing of their loan.  12 U.S.C. § 2605(e).  Under
11  RESPA lenders of federally related mortgage loans must disclose
12  whether servicing of a loan may be assigned, sold or transferred
13  to loan applicants.  12 U.S.C. § 2605(a).  Additionally,
14  borrowers may send QWRs under RESPA to loan servicers for
15  information relating to the servicing of their loan.  12 U.S.C. §
16  26055(e)(1).  Loan servicers have 60 days after the receipt of a
17  QWR to respond to the borrower inquiry.  12 U.S.C. § 2605(e)(2).

18       Plaintiff alleges that she sent defendant a QWR to
19  defendant on September 10, 2008, and that defendant never
20  responded in violation of RESPA.  Plaintiff's RESPA claim must
21  fail because she explicitly alleges that she was "not a borrower
22  of the loan."  (SAC ¶ 62.)  Under RESPA, a servicer only has the
23  duty to respond to QWRs sent "from the borrower," and accordingly
24  defendant was under no obligation to respond to plaintiff's QWR.
25  See 12 U.S.C. § 2605(e)(1)(A).  Accordingly, plaintiff cannot
26  recover for defendant's failure to respond to her improper QWR.

27       Additionally, a plaintiff must also allege actual harm
28  to survive a motion to dismiss of a RESPA claim.  Section 2605(f)

19

imposes liability on servicers that violate RESPA and fail to make the required disclosures.  12 U.S.C. § 2605(f).  Although this section does not explicitly make a showing of damages part of the pleading standard, "a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim."  Allen v. United Financial Mortg. Corp., 2009 WL 2984170, at *5 (N.D. Cal. Sept. 15, 2009).  For example, in Hutchinson v. Del. Sav. Bank FSB, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual damages."  410 F. Supp. 2d 374, 383 (D.N.J. 2006).

        This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure to respond or give notice has caused them actual harm.  See Singh v. Wash. Mut. Bank, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16, 2009 WL 2588885 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees") (quotation marks and citation omitted).  Courts, however, "have interpreted this requirement liberally."  Yulaeva v. Greenpoint Mortg. Funding, Inc., No. 09-1504, 2009 WL 2990393, at *15, (E.D. Cal. Sept. 9, 2009) (Karlton, J.).  For example, in Hutchinson, plaintiffs were able to plead such a loss by claiming that they had suffered negative credit ratings as a result of violations of RESPA, 410 F. Supp. 2d at 383, and in Yulaeva,

plaintiffs pled pecuniary loss by alleging that they were "required to pay a referral fee that was prohibited under RESPA." No. 09-1504, 2009 WL 2990393, at *15.

Plaintiff has not offered any facts to support that defendant's failure to respond to her QWR resulted in pecuniary damages. The closest plaintiff gets to alleging any harm is stating that she "has been harmed because she is unable to name the real party in interest to this suit . . . ." (SAC ¶ 105.) It is unclear how or even if this resulted in any pecuniary losses by plaintiff. Even under a liberal pleading standard for harm, plaintiff's pleading fails. Accordingly, the court must grant defendant's motion to dismiss this claim.

E.   California Rosenthal Fair Debt Collection Practices Act

Plaintiff's third cause of action alleges that defendant violated the RFDCPA. The RFDCPA prohibits a host of unfair and oppressive methods of collecting debt, but to be liable under the RFDCPA a defendant must fall under its definition of "debt collector." Izenberg v. ETS Svcs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). A "debt collector" under the RFDCPA is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c) (2008).

Foreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA. See Izenberg, 589 F. Supp. 2d at 1199; see also Rosal, 2009 WL 2136777, at *18 (dismissing RFDCPA claim as to all defendants in foreclosure case); Ricon v. Recontrust Co., No. 09-937, 2009 WL 2407396, at *4 (S.D. Cal. Aug. 4, 2009) (dismissing with prejudice

21

plaintiff's unfair debt collection claims in foreclosure case); <u>Pittman v. Barclays Capital Real Estate, Inc.</u>, No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) (dismissing with prejudice plaintiff's Rosenthal Act claim in foreclosure case because a "residential mortgage loan does not qualify as a 'debt' under the statute"); <u>Gallegos v. Recontrust Co.</u>, No. 08-2245, 2009 WL 215406, at *3 (S.D. Cal. Jan. 28, 2009) (dismissing RFDCPA claim in foreclosure case).  Since residential mortgage loans do not fall within the RFDCPA and plaintiff has not specifically identified any debt collection actions of defendants that fall outside the normal foreclosure process, the court must grant defendant's motion to dismiss plaintiff's cause of action for violations of the RFDCPA.

  F. <u>Slander of Credit</u>

   Plaintiff's seventh cause of action purports to state a claim for "slander of credit" at common law.  Plaintiff alleges that defendant "caused to be published with various credit reporting agencies false statements regarding the [p]laintiff's creditworthiness without informing [sic] that such claims were disputed."  (SAC ¶ 160.)

   Plaintiff's slander of credit claim is preempted by the Federal Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 <u>et seq.</u>, because it is entirely based on credit reporting.  The FCRA provides:

> No requirement or prohibition may be imposed under the laws of any state
>  (1) With respect to any matter regulated under . . . .
>
>   (F) Section 623 [15 U.S.C. § 1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting

agencies . . . .

15 U.S.C. § 1681t(b).  The FCRA thus preempts all matters regulated by § 1681s-2, which establishes the duties of furnishers of credit information and obliges them to provide accurate information to credit reporting agencies.  See 15 U.S.C. § 1681s-2; Townsend v. Chase Bank USA, N.A., No. CV 08-00527 AG (Anx), 2009 WL 426393, at *3 (C.D. Cal. Feb. 15, 2009).  Federal courts in California have consistently held that the FCRA preempts statutory and common law claims against furnishers of credit information for failing to properly investigate and report allegedly erroneous information.  See Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139 (N.D. Cal. 2005); Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005); Davis v. Maryland Bank, N.A., No. C 00-04191, 2002 U.S. Dist. LEXIS 26468 (N.D. Cal. 2002).  As plaintiff's claim is preempted under the FCRA, defendant's motion to dismiss the slander of credit claim must be granted.

G.   Intentional and Negligent Infliction of Emotional Distress

The elements for the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that

23

1  usually tolerated in a civilized community." <u>Christensen v. Sup.</u>

2  <u>Court</u>, 54 Cal.3d 868, 904 (1991) (internal quotations and

3  citations omitted); <u>see also</u> <u>Cook v. Lindsay Olive Growers</u>, 911

4  F.2d 233, 239 (9th Cir. 1990).  For emotional distress to be

5  severe, it must be "of such substantial quantity or enduring

6  quality that no reasonable man in a civilized society should be

7  expected to endure it." <u>Fletcher v. Western Nat'l Life Ins. Co.</u>,

8  10 Cal. App. 3d 376, 397 (1970).

9          "In the context of debt collection, courts have

10 recognized that the attempted collection of a debt by its very

11 nature often causes the debtor to suffer emotional distress."

12 <u>Ross v. Creel Printing & Publ'g Co.</u>, 100 Cal. App. 4th 736, 745,

13 (2002) (citing <u>Bundren v. Sup. Court</u>, 145 Cal. App. 3d 784, 789,

14 (1983)).  Plaintiff has failed to allege anything beyond normal

15 debt collection practices that would rise to the level of

16 "extreme and outrageous" conduct necessary to state a claim for

17 intentional infliction of emotional distress.  <u>See</u> <u>Pineda v.</u>

18 <u>Reyes</u>, No. 09-1938, 2009 U.S. Dist. LEXIS 96853, *26-28 (S.D.

19 Cal. Oct. 20, 2009) (dismissing intentional infliction of

20 emotional distress claim in wrongful foreclosure suit); <u>Coyotzi</u>

21 <u>v. Countrywide Fin. Corp.</u>, No. CV 09-1036 LJO SMS, 2009 U.S.

22 Dist. LEXIS 91084, at *27 (E.D. Cal. Sept. 16, 2009) (same).  As

23 plaintiff has failed to allege any actions by defendants outside

24 of the normal debt collection process, the court will grant

25 defendant's motion to dismiss plaintiff's cause of action for

26 intentional infliction of emotional distress.

27      H.   <u>California's UCL</u>

28          California's UCL, prohibits "any unlawful, unfair, or

24

1  fraudulent business act or practice." <u>Cal-Tech Commc'ns, Inc. v.</u>

2  <u>L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  This cause

3  of action is generally derivative of some other illegal conduct

4  or fraud committed by a defendant, and "[a] plaintiff must state

5  with reasonable particularity the facts supporting the statutory

6  elements of the violation." <u>Khoury v. Maly's of Cal., Inc.</u>, 14

7  Cal. App. 4th 612, 619 (1993).

8         To have standing to bring a claim under the UCL, a

9  plaintiff must have "suffered injury in fact and ha[ve] lost

10 money or property as a result of unfair competition." Cal. Bus.

11 & Prof. Code § 17204.Plaintiff's UCL claim is inadequate because

12 it fails to plead that plaintiff has actually suffered injury and

13 lost money as the result of defendant's alleged unfair

14 competition.  Plaintiff does not identify any economic losses she

15 has suffered as the result of the practices identified in her UCL

16 cause of action. (<u>See</u> SAC ¶¶ 125-136.)  Without sufficient

17 allegations of economic or property losses plaintiff has no

18 standing to bring suit under the UCL.  <u>See</u> <u>Californians For</u>

19 <u>Disability Rights v. Mervyn's, LLC</u>, 19 Cal.4th 223, 228 (2006).

20        Plaintiff's UCL claim is also appears to be solely

21 based other statutory violations plead in the SAC. (<u>See</u> SAC ¶

22 130.)  Other than listing her previous causes of action,

23 plaintiff identifies no specific practices of defendant that she

24 finds to be "unfair" or "deceptive."  Since plaintiff has failed

25 to state a claim on any of these grounds, and because these

26 grounds appear to be the sole basis for plaintiff's UCL claim,

27 she by necessity has failed to state a claim against defendant

28 under the UCL.  Accordingly, the court must dismiss plaintiff's

1  UCL claim.

2        IT IS THEREFORE ORDERED that defendant's motion to

3  dismiss be, and the same hereby is, GRANTED.

4        Plaintiff has twenty days from the date of this Order

5  to file an amended complaint, if she can do so consistent with

6  this Order.

7  DATED:  June 25, 2010

8

9        WILLIAM B. SHUBB
        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26